806 P.2d 1143 (1991)
In the Matter of D.S. and N.S., children alleged to be deprived.
Bobby SHOOK and Velma Shook, paternal grandparents of D.S. and N.S., Appellants,
v.
STATE of Oklahoma, ex rel., The DEPARTMENT OF HUMAN SERVICES, Appellee.
No. 74671.
Court of Appeals of Oklahoma, Division 3.
February 12, 1991.
Kay L. Van Wey, Lawton, for appellants.
Jan Jacobsma, Asst. Dist. Atty., Lawton, for appellee.
Released for Publication by Order of the Court of Appeals of Oklahoma, Division No. 3.

*1144 OPINION
GARRETT, Presiding Judge:
Bobby and Velma Shook (Appellants) are the paternal grandparents of the minor children D.S. and N.S. Appellants seek reversal of an order entered by the trial court which diminished their rights of visitation with the children.
The parents of the children, Marilyn and Danny Shook, were divorced on or about March 1, 1988, with Judge Roberts presiding over the divorce. Marilyn was given custody of the children, and Danny was granted rights of reasonable visitation.
Following Danny's visitation with the children on May 14, 1988, Marilyn accused him of sexually molesting the children and contacted the Department of Human Services (DHS). Petitions were filed on June 29, 1988, alleging the children were deprived. DHS assumed custody of the children, with physical placement with Marilyn. The children were adjudicated deprived on November 17, 1988. Judge Bledsoe presided over the juvenile proceeding.
Prior to the adjudication, Appellants filed an application for visitation in the divorce case. On August 24, 1988, Judge Roberts granted them visitation on the second and fourth Sundays of each month, from 9 a.m. until 6 p.m. The order provided that DHS "may" supervise the visitation but "shall" supervise it at Appellants' residence. Appellants were responsible for the transportation of the children to and from the home of their mother, Marilyn. On August 25, 1988, Judge Roberts entered a court minute in the divorce case that, in accordance with his conversation with Judge Bledsoe, Judge Bledsoe would handle the juvenile cases.
Judge Bledsoe issued an order by letter dated November 22, 1989, reciting that hearings had been held on November 2, 1989, and continued to November 10, 1989, placing the children in the temporary custody of DHS. The court recommended to DHS that D.S. be placed in a foster home suited for handling young children who have been sexually abused, so that he could receive appropriate counseling while in foster care. The court recommended that DHS place N.S. with Marilyn. The order also provided, inter alia, for supervised visitation with Danny. The visitation previously granted to Appellants was not mentioned in that order. On November 30, 1989, another letter order was entered by Judge Bledsoe, stating that since the November 22, 1989, order, he learned the visitation *1145 rights for Appellants were not addressed. This order states that Judge Bledsoe consulted with Judge Roberts, and he agreed "the grandparental visitation with . . . [N.S.] should be reduced to 9:00 a.m. to 4:00 p.m. on the 2nd and 4th Sundays, to provide for travel time on the return to Tulsa." He ordered that DHS was to supervise each of these visitations. Appellants received no prior notice of these hearings.
On December 22, 1989, pursuant to the motion to modify custody filed by DHS, an order was entered changing Appellants' visitation to the second and fourth Fridays of each month, from 10 a.m. to 12 noon, to take place in the Tulsa DHS office. Again, Appellants were given no notice of the hearing.
Appellants later filed a motion to intervene in the juvenile case, and Judge Bledsoe granted their motion on January 8, 1990.
Appellee's motion to dismiss this appeal addresses the merits of the case and is denied.
Appellants contend: (1) they have an equitable, statutory and fundamental right to the access and companionship of their grandchildren; (2) they were interested parties to whom notice of the hearings should have been given; and (3) the trial court violated their constitutional rights by denying them notice and an opportunity to be heard.
Grandparents have no constitutional right to visitation with their grandchildren. These rights come from statutory authority. Matter of K.S., 654 P.2d 1050 (Okl. 1982); Leake v. Grissom, 614 P.2d 1107 (Okl.1980). The pertinent statute for grandparental visitation is 10 O.S.Supp. 1989 § 5. It provides in part:
A. 1. Pursuant to the provisions of this section, any grandparent of an unmarried minor child shall have reasonable rights of visitation to the child if the district court deems it to be in the best interest of the child.
. . . . .
B. The district courts are vested with jurisdiction to enforce such visitation rights upon the filing of a verified application for such visitation rights. Notice as ordered by the court shall be given to the person or parent having custody of said child and the venue of such action shall be in the county of the residence of such person or parent.
The Supreme Court discussed the application of § 5 in In re Bomgardner, 711 P.2d 92 (Okl.1985), and the amendments it has undergone by the Legislature. The Court had to decide if the amended statute should be applied to the grandparents' claim for visitation in that case, or if it was required to apply the statute in effect at the time the claim arose. The Court noted that the statute did not specifically provide for prospective application only. The Court held that the rule against retroactive application of a statute should not be preferred "to the most fundamental rule of construction that mandates an interpretation which will effectuate the legislative design." 711 P.2d at 95-96. The Court found the Legislature's objective in the series of amendments of § 5 "was to make alienation from grandparents remediable in all the described circumstances. The primary goal of this court in construing statutory enactments is to carry into effect the intent of the legislature." 711 P.2d at 95. (Emphasis in original). In order to effectuate the purpose of § 5, as stated by the Supreme Court, the amended version of the statute was applied to the facts of the case. This resulted in giving the grandparents rights of visitation. The child's best interest is the test for granting or denying visitation. In re Bomgardner, 711 P.2d at 97. The Court stated:
Court supervision over the welfare of children is equitable in character. The legislature has never statutorily declared a grandparent's access to the grandchild to be nonactionable. All impediments to the cognizance of a grandparent's claim have been self-imposed. Equity recognizes  independent of statute  the grandparents' claim to the companionship of their grandchild. Quite often it is *1146 an important source of stability and calm in the child's environment.
We hold that the maternal grandparents do have standing  both under the statute and in equity  to assert a claim for access and companionship of their offspring.
Under the reasoning of In re Bomgardner, we hold the Appellants in the present case should have received notice before their rights of visitation, previously ordered by Judge Roberts, were so drastically changed. As stated above, Judge Roberts ordered that Judge Bledsoe should handle the juvenile cases and so ordered on August 25, 1988, one day after signing the order granting Appellants' application for visitation. Under 10 O.S.Supp.1989 § 1102, this had the effect of consolidating the issues in the divorce case and the juvenile case:
B. [T]he district court in which a petition is filed which alleges that a child is in need of supervision or deprived can issue any temporary order or grant any interlocutory relief authorized by this chapter notwithstanding the fact that another district court within the state has jurisdiction of the child or has jurisdiction to determine the custody or support of the child; but the court in which the juvenile petition is filed shall transfer the proceeding to the other court unless the judge of said other court, after consultation with the judge of the court where the juvenile petition is filed, shall either transfer the other action to the court where the juvenile petition is filed or authorize that court to proceed with the juvenile proceeding and to make any necessary orders in regard to the child should he be adjudged to be . . . deprived. Where the other proceeding is pending in the same judicial district in which the juvenile petition is filed, the chief judge of the judicial district shall determine if the proceedings shall be consolidated and, if consolidated, which judge shall try the issues when the judges to whom the cases have been assigned are unable to agree on the procedure that should be followed.
In Bomgardner, supra, it was held that equity, independent of statute, recognized the grandparents' claim to companionship of their grandchildren and that they had standing to assert a claim for visitation. We hold that Judge Roberts' order granting visitation to Appellants established their right to receive notice and an opportunity to be heard in a proceeding affecting visitation rights which had already been granted to them. Section 5(A) provides the grandparents shall have reasonable rights of visitation if the court deems it in the best interest of the child. Appellants herein had no opportunity to answer allegations that the visitation allowed under the order already in place was not in the children's best interest.
The orders of the trial court decreasing and changing the rights of visitation of Appellants with their grandchildren N.S. and D.S. are reversed insofar as they affect the rights of these Appellants. This case is remanded to the trial court to hold an evidentiary hearing, giving Appellants an opportunity to appear and present evidence to answer any allegations lodged against them which resulted in the decrease and change of their visitation, and to determine what visitation is proper in the context of the ongoing juvenile case. At the hearing and in ordering visitation, the convenience of the grandparents must be considered along with the convenience of employees of DHS. Of course, the best interest of the children is of paramount consideration.
REVERSED AND REMANDED WITH DIRECTIONS.
HUNTER, C.J., and HANSEN, J., concur.